# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENOIR KAUFMANN<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SYNCREON, U.S., Inc.<br><br>　　　　Defendant. | Case No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Renoir Kaufmann (hereinafter, "Plaintiff") moves the Court for entry of judgment in his favor against the named Defendants and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to the Americans with Disabilities Act (hereinafter, "ADA"). Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

2. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3. Plaintiff brings this action against his former employer, Syncreon U.S. Inc., (hereinafter "Syncreon" or "Defendant"). Syncreon is a Pennsylvania company located at 609 Memory Lane, York, PA 17402.

4. Plaintiff is an adult, male who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and was employed by Syncreon.

## UNDERLYING FACTS

5. Plaintiff worked for Syncreon from September 15, 2019, to the date of his termination on December 12, 2019, as a Forklift Operator.

6. Syncreon controlled the hours worked and the projects worked on while Plaintiff worked for Syncreon. Further, Syncreon supervised Plaintiff's work, made decisions regarding workplace accommodations, discipline and termination.

7. Plaintiff was assigned to receiving and breakdowns at Syncreon (which is scanning parts that come in and separating parts off larger pallets).

8. On December 12, 2019, Plaintiff seriously injured his back at work while doing pallet breakdowns. Thereafter, on the same day, Plaintiff reported to Chuck Harrison, a Workforce Success Specialist at Abacus Corporation, that he had incurred a serious lower back injury at approximately 2:30am of the same date while breaking down a pallet at work. In accordance with Abacus policy, Mr. Harrison prepared a First Report of Injury form to submit to Abacus' workers'

compensation insurance company to initiate a workers' compensation claim. A copy of the First Report of injury is attached hereto as **Plaintiff's Exhibit A**. Additionally, Mr. Harrison provided the Plaintiff with information on how to seek medical care for the work-related injury.

9. On December 12, 2019, Plaintiff was diagnosed at the Patient First in York, Pennsylvania with a sprain of the sacroiliac joint, sprain and pain in L-Spine, and Lumbar Spondylolisthesis (lumbar was popped out).

10. Plaintiff was placed on temporary light duty restrictions to not bend, not operate machinery more than 2 hours per day, and to rarely lift, carry, push and/or pull in excess of 15lbs. Plaintiff was given an anticipated full duty release date of December 19, 2019. On December 12, 2019, Abacus advised Syncreon of the work-place injury and inquired if Syncreon could accommodate the light duty restrictions. Syncreon advised Abacus on December 12, 2019, that Syncreon could not accommodate Plaintiff's light duty restrictions.

11. Thereafter, on December 13, 2019, Plaintiff avers Mr. Harrison told Plaintiff to tell Syncreon that the doctor said he was feeling better, although he was not, presumably so that Syncreon would allow him to return to work sooner.

12. On December 16, 2019, Plaintiff had a patient follow-up visit with Patient First. At such visit, Plaintiff's temporary light duty restrictions were increased

slightly to where he was not permitted to lift, carry, climb, push, or pull. Plaintiff was then given an anticipated full duty release date of December 24, 2019.

13. Beginning December 18, 2019, all the Abacus employees working at the Facility were placed on a pre-planned, holiday break through January 1, 2020. All of the Abacus temporary employees were informed of the holiday break in advance. Had Plaintiff not been injured, he allegedly would have only worked four more shifts before the holiday break. From September 1, 2019, until the holiday break began, Abacus averaged 21 temporary employees working at the Facility each day.

14. On December 23, 2019, Plaintiff had a 2nd follow-up visit with Patient First. At such visit, Plaintiff's temporary light duty restrictions remained the same and he was referred to OSS Health. On December 26, 2019, Plaintiff was seen by OSS Health, and remained on the same temporary light duty restrictions.

15. Prior to returning from the holiday break, Syncreon allegedly conducted a review of the attendance records of the Abacus temporary employees for compliance with the Syncreon attendance policy.

16. On Sunday, December 29, 2019, Mae R. Perry, Syncreon Human Resources Manager, ended the assignment of the Plaintiff and two other Abacus temporary workers for alleged attendance violations. Copies of the emails ending such assignments are attached hereto as **Plaintiff's Exhibit B**.

17. Syncreon alleged that each instance of Plaintiff's violations of the Syncreon attendance policy occurred close to, but prior to, the date of his work-related injury.

18. On January 3, 2020, Plaintiff had a follow up appointment with OSS Heath, and again remained on the same temporary light duty restrictions.

19. From September 1, 2019, until January 1, 2020, Syncreon ended the assignment of seven Abacus temporary employees for violating the Syncreon attendance policy.

20. Plaintiff alleges that on Sunday, December 29, 2019, he was informed by the worker's compensation insurance company that he was terminated for attendance after he inquired about his workers compensation pay. Abacus was allegedly notified that Plaintiff's assignment was ended by Syncreon at 7:16pm on December 29, 2019.

21. Abacus later informed Plaintiff's workers' compensation adjuster of Plaintiff's changed work status.

22. On January 6, 2020, Abacus informed Plaintiff that his assignment at the Facility was ended by Syncreon due to Plaintiff's violation of the Syncreon attendance policy.

23. Plaintiff was thereafter informed by his workers' compensation adjuster of the implications to his workers' compensation claim resulting from his assignment ending due to a violation of the Syncreon attendance policy.

24. The Plaintiff's workers' compensation claim was fully closed on January 31, 2020, when OSS Health discharged the Plaintiff from care and provided the Plaintiff with a full duty release. Although Plaintiff still suffers with lower back issues.

25. Plaintiff subsequently filed a dually filed Charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") under the work-sharing program on May 4, 2020, which was docketed as 530-2020-03509. Plaintiff subsequently received a right to sue notice on October 1, 2021 (see attached as **Plaintiff's Exhibit C**).

26. The Defendants' actions or inaction are of a continuing nature thus they fall under the doctrine of a continuing violation theory.

27. Syncreon is responsible/liable for the actions of its agents under a theory of *Respondeat Superior*.

## COUNT 1
## PHRA DISABILITY DISCRIMINATION

28. Plaintiff incorporates herein the previous averments as if fully set forth.

29. The Plaintiff is a qualified individual with a disability under the PHRA due to a sprain of the sacroiliac joint, sprain and pain in L-Spine, and Lumbar Spondylolisthesis (lumbar was popped out) and Defendant's notice of the same.

30. The Plaintiff had a record of disability and/or was regarded as disabled by the Defendant.

31. The PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

32. Plaintiff requested an accommodation pursuant to state and federal law, i.e., light duty.

33. Defendant failed to accommodate Plaintiff's disability and instead, it terminated Plaintiff when Plaintiff sought accommodations for medical reasons related to Plaintiff's disability within 17 days of notice of the work-related injury.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 2
## PHRA DISABILITY RETALIATION

34. Plaintiff incorporates herein the previous averments as if fully set forth.

35. The PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

36. The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

37. Defendant retaliated against the Plaintiff on account of Plaintiff's protected activity when it refused to provide a light duty assignment and instead terminated Plaintiff after Plaintiff sought accommodations related to Plaintiff's disability with 17 days of notice of the work-related injury.

38. Furthermore, Plaintiff avers that the Defendant's purported basis to termination (e.g., attendance issues) is false and erroneous and a pretext for underlying invidious reasons.

39. As a result, the Plaintiff avers that the Defendant retaliated on account of Plaintiff's protected activity by discharging Plaintiff without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory

damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 3
## ADA DISABILITY DISCRIMINATION

40. Plaintiff incorporates herein the previous averments as if fully set forth.

41. The Plaintiff is a qualified individual with a disability under the ADA due to sprain of the sacroiliac joint, sprain and pain in L-Spine, and Lumbar Spondylolisthesis (lumbar was popped out) and Defendant's notice of the same.

42. The Plaintiff had a record of disability and/or was regarded as disabled by the Defendant.

43. The ADA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

44. Plaintiff requested an accommodation pursuant to state and federal law, i.e., light duty.

45. Defendant failed to accommodate Plaintiff's disability and instead, it terminated Plaintiff when Plaintiff sought accommodations for medical reasons related to Plaintiff's disability within 17 days of notice of the work-related injury.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory

damages including wage loss, pain, suffering, punitive relief and all reasonable attorney's fees and costs of litigation.

## COUNT 4
## ADA DISABILITY RETALIATION

46. Plaintiff incorporates herein the previous averments as if fully set forth.

47. The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

48. The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

49. Defendant retaliated against the Plaintiff on account of Plaintiff's protected activity when it refused to provide a light duty assignment and instead terminated Plaintiff after Plaintiff sought accommodations related to Plaintiff's disability with 17 days of notice of the work-related injury.

50. Furthermore, Plaintiff avers that the Defendant's purported basis to termination (e.g., attendance issues) is false and erroneous and a pretext for underlying invidious reasons.

51. As a result, the Plaintiff avers that the Defendant retaliated on account of Plaintiff's protected activity by discharging Plaintiff without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not

limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 5
## VIOLATION OF PENNSYLVANIA PUBLIC POLICY
Workers Compensation Retaliation and Wrongful Termination

52. Plaintiff incorporates herein the previous averments as if fully set forth.

53. It is a public policy of the Commonwealth of Pennsylvania in the protection of public health, safety, and welfare to ensure that workers are kept safe and free from harm.

54. A public-policy exception to the at-will doctrine was recognized by the Pennsylvania Supreme Court in *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998), where the Court held that an at-will employee who alleges a claim of retaliatory discharge for filing a workers' compensation claim has stated a common law cause of action for which relief may be granted.

55. The Plaintiff sought assistance from his employer due to a work-related injury: a sprain of the sacroiliac joint, sprain and pain in L-Spine, and Lumbar Spondylolisthesis (lumbar was popped out).

56. His communication of his injury and that of his temporary agency placed the employer on notice of the Plaintiff's need for workers compensation such that the subsequent discharge violated public policy entitling him to damages.

57. The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

58. As a company in Pennsylvania with over 100 employees, the Defendant is aware of its responsibility to provide workers compensation benefits to injured workers and therefore the Defendant's termination of the Plaintiff in retaliation for requesting workers compensation benefits is a retaliatory discharge.

59. As a result of Plaintiff's termination, he has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to his reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as specified below.

60. The Plaintiff prays that the Court award monetary relief as follows:

61. On Plaintiff's Causes of Action, order Defendants to pay equitable monetary relief, compensatory damages and punitive relief to the Plaintiff as are asserted under the ADA and/or PHRA, where and as applicable, and in an amount to be proven at trial.

62. The Plaintiff prays that the Court award costs, expenses, and attorneys' fees, payable by Defendant where and as applicable, by determining that the Plaintiff

is a prevailing party on Causes of Action and thereupon awarding the Plaintiff reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

63. Further, the Plaintiff prays that the Court award monetary relief as follows:

64. The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

65. The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period to assure that the Defendants have fully complied with the remedies to the greatest extent practicable.

66. The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation, and punitive damages as applicable under Plaintiff's respective causes of action where and as applicable to the named Defendant.

67. The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated: November 6, 2021                     Respectfully submitted,

                                            DONHAM LAW

                                            *By: /s/ Jeremy A. Donham, Esquire*
                                            Jeremy Donham, Esquire
                                            Attorney I.D. No. 206980
                                            PO Box 487, Dellslow, WV 26531
                                            717.881.7855 (ph) 888.370.5177 (fax)